IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DCCI, LLC, and ROBERT GONZALEZ,

    Plaintiffs,

v.

MIKE KEITH,

    Defendant

---

MIKE KEITH,

    Third-Party Plaintiff,

v.

ALICIA GONZALEZ; and DOUGLAS CONTRACTING CORPORATION,

    Third-Party Defendants.

Civ. No. 6:13-cv-00883-MC

ORDER

MCSHANE, Judge:

    This case concerns the sale of a 1970 Dodge Challenger gone very bad. Unfortunately, the cost of litigating this simple breach of contract case now likely approaches or exceeds the value of the car. Pending are motions for summary judgment by plaintiffs DCCI, LLC and

1 –ORDER

Robert Gonzalez (ECF No. 92), third-party defendants Alicia Gonzalez and Douglas Contracting Corporation (ECF No. 56), and a motion for sanctions by defendant Mike Keith (ECF No. 97). The parties are familiar with the facts, which I outlined in my opinion granting Keith's motion for summary judgment on his breach of contract claim. (March 26, 2014 Opinion, ECF No. 80.)

## STANDARD OF REVIEW

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Third-Party Defendants' Motion for Summary Judgment

There is no doubt Alicia Gonzalez and her company Douglas Contracting Corporation (collectively, "DCC") were involved in the sale of the Challenger. However, upon review of the record, their involvement appears limited, and does not rise to liability on any of Keith's claims. At plaintiffs' request, DCC paid for half of the purchase price of the vehicle, which plaintiffs later repaid. Alicia Gonzalez arranged for the travel and payment of the expert plaintiffs hired to

2 – ORDER

inspect the car. Alicia Gonzalez had some communications with the expert's secretary about the scheduling. In fact, most of DCC's actions appear to be done not for its own benefit, but in the capacity as an agent of plaintiffs. While there are some questions regarding DCC's business, and Alicia Gonzalez's knowledge of that business, none of those facts relate to the purchase of the Challenger. Rather, it appears Alicia Gonzalez simply performed some ministerial functions related to the purchase of the car because her father asked her to. Even viewed in the light most favorable to Keith, the facts do not support his claims against Alicia Gonzalez or DCC.

That is not to say the claims against DCC were frivolous or that Keith lacked an objectively reasonable basis for bringing the claims. Although DCC was involved in the sale, the extent of its involvement was only learned via discovery. Additionally, the relationship between plaintiffs and DCC is not transparent. This relationship too was only revealed in discovery. Although Alicia Gonzalez owns her own business, it appears—at least when viewing her testimony at deposition—that the company does not do much. Alicia Gonzalez apparently rents an office in her father's office, and Alicia Gonzalez appears to act, at least in regard to the transaction at issue, as a sort of personal secretary for her father. While Alicia Gonzalez may have performed some actions on her father's behalf, those actions do not create liability to Keith in this instance. That Alicia Gonzalez merely acted as her father's agent, and not in connection with her father in a conspiracy to allegedly defraud Keith, was revealed only in depositions.

Third-party defendants' motion for summary judgment, (ECF No. 56), is GRANTED.

## II. Plaintiffs' Motion for Summary Judgment

Keith's UTPA and conversion claims each depend on Keith owning the Challenger. The parties, however, agree that title to the car passed to plaintiffs when the car was transported from Ohio to Oregon with the agreement that plaintiffs would pay Keith a total of $200,000. Although

3 –ORDER

Keith argues title reverted back when plaintiffs later attempted to reject the Challenger, my ruling on Keith's motion for summary judgment concluded as a matter of law that the attempted rejection was neither timely nor reasonable and therefore ineffective as a matter of law. Therefore, title never reverted back to Keith, and Keith's conversion and UTPA claims necessarily fail.

As to the fraud claim, plaintiffs argue no admissible evidence supports Keith's theory that plaintiffs knew all along they were attempting to gain possession of the Challenger and then negotiate a much lower price. I disagree. Although Keith lacks a direct admission by Gonzalez that he intended to defraud Keith, there is an abundance of circumstantial evidence supporting Keith's claim.

Viewed in the light most favorable to Keith, Gonzalez agreed to pay $200,000 for the Challenger on the condition the Challenger passed Gonzalez's inspection. After having an expert inspect the car, Gonzalez agreed to pay half the purchase price, with the other half paid after transporting the car to Oregon. After obtaining possession of the car, Gonzalez informed Keith the car was not as advertised. When Keith offered to drive to Oregon to pick up the Challenger and refund plaintiff's money, Gonzalez refused. Instead, in a letter from his attorney, Gonzalez informed Keith he would have to pay over $30,000 in alleged out-of-pocket costs, such as a $10,000 broker fee, insurance and transportation costs, and even the cost of the experts Gonzalez flew out to inspect the vehicle. On top of that, Gonzalez informed Keith he had only a few days to accept the offer before Gonzalez would file a lawsuit against Keith. Plaintiffs shortly thereafter filed this action, and later attempted, as part of a purported "settlement negotiation," to buy the car (and apparently dismiss this action) for just over half of the agreed purchase price. Viewing all of the evidence together, a reasonable juror could conclude plaintiffs intended all

4 –ORDER

along to obtain possession of the Challenger and then use that possession as leverage to negotiate a substantially discounted price.

Additionally, although I ruled for Keith on his breach of contract claim, there is enough evidence to send the punitive damages question to the jury

Plaintiff's motion for summary judgment, ECF No. 92, is GRANTED as to the conversion and UTPA claims, and DENIED as to the fraud claim.

### III. Defendant's Motion for Sanctions

Keith moves for sanctions for plaintiffs' failure to turn over documents in discovery. As noted, the cost of this litigation likely exceeds the cost of the Challenger. At yesterday's oral argument, I related my opinion that this litigation has been shameful. Although there is plenty of blame to go around, the majority of the blame falls on plaintiffs. On several occasions, I have had to step in to order the production of documents. On others, I have had to step in to prevent plaintiffs from dismantling the Challenger's engine even as the parties disputed ownership of the vehicle. On other occasions, I have had to step in and order plaintiffs to provide information related to all cars purchased (after plaintiffs refused to turn over documents related to "race cars" as, in their opinion, "race cars" were not "collector cars"). All of these actions substantially increased the cost of litigation. At the rule 16 conference nearly one year ago, I discussed accelerating the trial schedule and truncating discovery in order to keep costs down. Plaintiffs and defendant agreed. DCC's attorney, new to the case, needed additional time to inquire as to that possibility. Although I gave the parties 60 days to accept an accelerated schedule, that was the last I heard of the matter. Soon, the parties bogged down in petty discovery disagreements.

Keith's main claim here has not been a secret. Plaintiffs have known for many months that Keith alleged plaintiffs and Govier acted in concert to produce a favorable inspection only to

5 –ORDER

later "gin up" an unfavorable report after receiving possession of the Challenger. On January 8, 2014, Keith, in a previous motion for sanctions, stated "Most importantly, Plaintiffs have not produced any documents, other than invoices, from expert Galen Govier's pre-purchase inspection of the car that is the subject of this case. . . . Mr. Keith cannot proceed with the deposition of Robert Gonzalez until he has had the opportunity to review these documents. Further, Mr. Keith will likely be moving to add Mr. Govier as a defendant in this case after he has reviewed the material related to Mr. Govier's pre-purchase inspection." Keith Mem. in Supp. Of Mot. for Disc. Sanctions, 2, ECF No. 36, 2.

At yesterday's oral argument, plaintiffs admitted they have had a hard time obtaining documents from Govier. That is an overstatement. Rather, it appears plaintiffs simply were not all that interested in making sure Govier turned over documents necessary to Keith's claim. Plaintiffs agreed to accept service of the subpoena on Govier's behalf. At Govier's deposition months later, it soon became clear he had never seen the subpoena and never searched for certain documents or emails, including the actual first report. Although plaintiffs may have spoken briefly with Govier's assistant regarding the production of documents, plaintiffs never spoke with Govier himself to make sure the assistant relayed the requests. Based on Govier's deposition testimony, his assistant in fact did not relay many of those requests to Govier.[1]

It makes no difference whether Keith knew Govier previously rated the car favorably. Keith was entitled to the actual report, as discussed in hearings on several occasions.

---

[1] Plaintiffs relationship with Govier is somewhat confusing. In my opinion granting Keith's motion for summary judgment on his breach of contract claim, I noted that if plaintiffs have a valid claim against anyone, it is likely against Govier himself for performing a negligent inspection. Additionally, it is clear that when plaintiffs in fact want to get documents from Govier—such as a second report of the Challenger coming to a drastically different conclusion, necessary for plaintiffs' claims here—plaintiffs are able to quickly get in touch with Govier himself and secure production of the documents.

6 –ORDER

There is a reason judges prefer the parties to work keep the court out of every dispute that arises in discovery. Attorneys working together in a professional manner tend to, among other things, keep costs down. The attorneys in this case have fought each other tooth and nail, seemingly over everything. And while there is plenty of blame to go around, the majority of the blame falls on plaintiffs. This simple case involving a sale of goods gone bad should have been tried a year ago on an accelerated schedule. As it is, we go to trial in three weeks and the attorneys fees keep piling up. Regardless of the outcome, there will be no winner in this litigation.

Keith's motion for sanctions, ECF No. 97, is GRANTED. This finding is made not solely based on Govier's report, but upon weighing the totality of the discovery disputes throughout this litigation. The appropriate amount of sanctions will be determined after the August 19 trial. IT IS SO ORDERED.

DATED this 31 st day of July, 2014.

_____
Michael McShane
United States District Judge